In re Walter B. LEBOWITZ,
Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 06–BG–271.

District of Columbia Court of Appeals.

Submitted Feb. 7, 2008.
Decided March 13, 2008.

Walter B. Lebowitz filed a brief pro se.

Wallace E. Shipp, Jr., Bar Counsel, Judith Hetherton, Senior Assistant Bar Counsel, and Traci M. Tait, Assistant Bar Counsel, for the Office of Bar Counsel.

Before REID * and KRAMER, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

This reciprocal disciplinary proceeding is predicated on an order of the Supreme Court of California, dated December 16,

---

* Judge Reid joins the court's opinion, except for the incorporation of the Report of the    Board on Professional Responsibility.

2005, accepting the resignation of respondent Walter B. Lebowitz from the State Bar of California while charges against him were pending. In its well-reasoned and persuasive Report and Recommendation, a copy of which is attached hereto and made a part hereof, the Board on Professional Responsibility has recommended, as identical reciprocal discipline, that Lebowitz be suspended from practice in the District of Columbia for five years, and that reinstatement be conditioned upon a demonstration by Lebowitz of his fitness to practice law. Lebowitz has excepted to the recommendation; Bar Counsel has not.

Our review of the Board's recommendation is deferential, *see* D.C. Bar R. XI, § 9(g), and we accord that recommendation substantial weight. *In re Slosberg*, 650 A.2d 1329, 1330 (D.C.1994); *see also In re Soininen*, 853 A.2d 712, 723 (D.C. 2004). Essentially for the reasons stated by the Board, and with only the limited elaboration that follows, we adopt as our own the Board's Report and Recommendation.

■ The case is somewhat unusual; indeed, it presents a question of first impression in this jurisdiction. This is so because, as noted by the Board, the misconduct that led to the disciplinary proceeding against Lebowitz occurred before Lebowitz' admission to our Bar on No-

vember 12, 2004. We agree with the Board, however, that regardless of when the underlying misconduct in another jurisdiction occurred, "[r]eciprocal discipline is necessary, for otherwise such suspended or disbarred lawyers would be free to relocate in the District of Columbia and take up or continue practicing law there." As the Supreme Court of California explained in *Stratmore v. State Bar of California*, 14 Cal.3d 887, 123 Cal.Rptr. 101, 538 P.2d 229, 230–31 (1975) (en banc) (per curiam), "since ... we may discipline an attorney for conduct either in or out of his profession which shows him to be unfit to practice, it is irrelevant that Stratmore's misconduct preceded his admission to practice." *See also* Debra T. Landis, Annotation, *Disciplinary Action Against Attorney Based on Misconduct Prior to Admission to Bar*, 92 A.L.R.3d 807 (Supp. 2007). "Courts in many cases have held or recognized the rule that misconduct of an attorney prior to admission to the bar can be the sole basis for disciplinary proceedings." *Id.* at 809.

Lebowitz claims that the discipline recommended by the Board would be "oppressive" and "unjust," and that it would impose a hardship upon himself and others, on the basis of acknowledged but stale misconduct that occurred before Lebowitz became a member of our Bar.[1] According

1. Lebowitz asserts that his serious record of prior discipline, which includes two felony convictions and a period of incarceration, was "totally, fully, and completely acknowledged" in his application for admission to our Bar, and that "if the D.C. Bar did not want respondent as a member, they [sic] should have advised him at that time." Lebowitz has not made the proceedings relating to his admission in the District a part of the record, and we are in no position to assess his apparent suggestion that he arguably should not have been admitted to practice here in the first place. But be that as it may, the Supreme Court of California imposed its discipline against Lebowitz a full year *after* his admission in the District, and for the reasons cogently explained by the Board, it became this court's responsibility to impose reciprocal discipline when the disposition of the proceedings in California was brought to its attention. Further,

[t]he fact that the Board of Law Examiners is required to pass its judgment upon the "moral character and standing" of an applicant does not preclude the court, after a certificate to practice has been obtained by the application, from revoking the certificate, striking the name of the attorney from

to Lebowitz, he has been living "an exemplary life" since this misconduct occurred. We conclude, on the contrary, that there are aggravating circumstances of quite recent vintage. In affidavits filed on April 21, 2006, pursuant to D.C. Bar R. XI, § 14(g) and *In re Goldberg,* 460 A.2d 982 (D.C.1983), Lebowitz assured the court, *inter alia,* that he "has no active cases in the District of Columbia," that he "had no clients to notify that he was suspended," and that he has "refrained from practicing in the District of Columbia, since he resigned from the State Bar of California and received notice of this action." This was a somewhat startling assertion because, less than three weeks earlier, on April 4, 2006, Lebowitz had represented, in his "Response to Proposed Suspension," that to suspend him from practice "would be a great hardship on [him] and the people he is helping with their immigration problems." According to Lebowitz, these people (obviously clients) [2] would not be able to secure the assistance of new counsel "who could became familiar with their problems fast enough before they could be deported." On April 25, 2006, in light of these apparently contradictory representations, Bar Counsel sent Lebowitz a letter requesting that he "clarify" his statements. So far as the record reveals, there has been no "clarification" from Lebowitz during the almost two years that have elapsed since Bar Counsel sent his letter, and Lebowitz has made no mention of the point in his exception to the Board's Report, which he filed on February 7, 2007.

In the absence of any explanation from Lebowitz, we are compelled to conclude that the conflicting representations made by him on April 4, 2006, and April 21, 2006 cannot both be true. If, as Lebowitz represented on April 4, his suspension in the District would work a hardship on his immigration clients, then his representations seventeen days later that he had no clients whom he could notify of his suspension, and that he had not been practicing law, were necessarily false. If, on the other hand, Lebowitz had no clients to notify, then the claimed hardship to his immigration clients was a fabrication. Either way, Lebowitz' conduct in this proceeding has been less than "exemplary," and the evidence, unexplained by Lebowitz, provides substantial reason to believe that he has violated Rule 3.3(a) of the Rules of Professional Conduct (making false statements of material fact to a tribunal), as well as Rule 8.4(c) (conduct involving dishonesty). *See, generally, In re Cleaver–Bascombe,* 892 A.2d 396, 404–05 (D.C.2006), discussing these Rules.

Accordingly, and for the reasons stated by the Board in its attached Report, Walter B. Lebowitz, is hereby suspended from practice for a period of five years, with reinstatement conditioned upon his demonstrating his fitness to resume the practice of law. We direct Lebowitz' attention to the requirements of D.C. Bar R. XI,

---

the rolls, disbarring him from practice *because of conduct of which he was guilty before he passed the examinations and obtained a certificate to practice.* This power must necessarily exist to enable the court to preserve its dignity and integrity and prevent the exercise of the privilege of practicing by one whose character and course of dealing renders him unfit to be intrusted with the privilege and to associate with the honorable and worthy members of the pro-

fession and to participate in the administration of justice.
*Gould v. State of Florida,* 99 Fla. 662, 127 So. 309, 311 (1930) (emphasis added).

2. Lebowitz represented in his affidavit that "[e]ven though Respondent resides primarily in Florida, *he represents clients in Washington, D.C. at this time* and also represents students at a University *pro bono* regarding their immigration problems." (Emphasis added.)

§ 14(g) and their effect on his eligibility for reinstatement, D.C. Bar R. XI, § 16(c). For purposes of reinstatement, Lebowitz' suspension shall commence upon his full compliance with R. XI, § 14(g), and upon his providing a candid and satisfactory explanation of the contradictions between his representations of April 4, 2006 and April 21, 2006.

*So ordered.*[3]

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This reciprocal matter is predicated on an order of the Supreme Court of California, dated December 16, 2005, accepting Respondent's resignation, with charges pending, from the State Bar of California. Bar Counsel urges that we recommend disbarment, which it contends is the functionally equivalent reciprocal discipline under D.C. Bar R. XI, § 11.

The charges pending at the time Respondent submitted his resignation from the California Bar in November 2005 were based entirely upon Respondent's admissions of misconduct in an earlier Florida case. The admitted misconduct consisted of two instances, during the period from November 2000 to March 2004, of Respondent's practicing law in Florida despite the Florida Supreme Court's acceptance, on September 14, 1989, of his petition for resignation from the Florida Bar without leave to reapply. At the time he engaged in unauthorized practice in Florida, he was not a member of the Florida Bar. Nor was he a member of the District of Columbia Bar.

Two substantial issues arise in this matter. First, can reciprocal discipline be ordered under the District of Columbia disciplinary law when the original court's discipline is based upon conduct that occurred at a time when the respondent was not a member of the District of Columbia Bar? If so, would the misconduct charged against Respondent at the time of his resignation from the California Bar warrant substantially different discipline in the District of Columbia?

## I. PROCEDURAL HISTORY

Respondent was admitted to the District of Columbia Bar on November 12, 2004. Statement of Bar Counsel, Appendix A. His registration statement discloses his membership in the State Bar of California, as a result of his having been "reinstated" by that bar on January 2, 1986. *Id.* At present, by virtue of his resignation from the California Bar, he is not a member of any bar other than the District of Columbia Bar. Prior to September 14, 1989, he

---

**3.** We recognize that Lebowitz is approximately seventy-seven years old, and that he was first admitted to practice (in Florida) more than half a century ago. We agree with the Board that "were it not for Respondent's history of felony convictions, the disciplinary suspensions in both Florida and California resulting from those convictions, and other aggravating factors in this matter, the two instances of unauthorized practice of law with which Respondent was charged at the time of his resignation in California (and that he admitted in Florida) might warrant discipline that is substantially different—and considerably less onerous—than disbarment or suspension for five years." (Citations omitted.) In light of the standards and precedents applicable to reciprocal discipline, as comprehensively described in the Board's Report, and further considering Lebowitz' contradictory representations to the court, we are constrained to conclude that the discipline recommended by the Board falls within the wide range of acceptable outcomes, *In re Goffe*, 641 A.2d 458, 463–64 (D.C.1994), and therefore warrants our adoption of the proposed sanction.

was a member of the Florida Bar.[1]

## A. *Prior District of Columbia Proceedings*

Bar Counsel brought the California disciplinary order to the attention of the District of Columbia Court of Appeals (the "Court") by a letter dated March 20, 2006 with a proposed order commencing this reciprocal disciplinary proceeding. Respondent, by letter dated March 28, 2006, filed a "Response to the Notice of Proposed Order" admitting that he resigned from the California Bar with charges pending, but maintaining nonetheless that the resignation "should not [a]ffect his membership in the Bar of the District of Columbia Court of Appeals" because his "actions did not constitute any misconduct in the District of Columbia." *See* Record Index Tab 4. He also urged that "[i]t would be unjust and oppressive to be punished again ... when it would be a great hardship on [him] and the people he is helping with their immigration problems." *Id.* These people, Respondent asserts, "would have no opportunity of obtaining new counsel who could become familiar with their problem fast enough to assist them before they could be deported." *Id.* Finally, he urges that his "conduct in no way poses any threat of harm to [his] clients" and that the Court should determine that there is no "culpability on [his] part that would require any discipline." *Id.*

Despite Respondent's contentions, the Court entered an interim order on April 4, 2006 that suspended Respondent "pending final disposition of this proceeding" and directed Bar Counsel to inform the Board

of "its position regarding reciprocal discipline" and the Board to "recommend promptly thereafter ... whether identical, greater or lesser discipline should be imposed as reciprocal discipline or whether the Board, instead, elects to proceed *de novo* pursuant to D.C. Bar R. XI, § 11." *In re Lebowitz*, No. 06–BG–271 (D.C. Apr.4, 2006). A month later, on May 3, 2006, the Court directly addressed Respondent's earlier pleading in response to Bar Counsel's proposed order and entered another order, which construed the earlier pleading as "a motion to vacate the interim order of suspension" and denied that motion. *In re Lebowitz*, No. 06–BG–271 (D.C. May 4, 2006).

## B. *Misconduct Charged in the California Proceeding*

The disciplinary charges pending at the time Respondent tendered his resignation from the California Bar were based on Respondent's previous admission in a proceeding in the Supreme Court of Florida (before a referee) that, in two matters, he had engaged in the unauthorized practice of law in Florida. *See* Conditional Guilty Plea and Consent to Judgment for Discipline, filed by Respondent on March 21, 2005 in Florida Supreme Court Case No. SC04–1598, attached to the Statement of Bar Counsel in Exhibit B (Record Index Tab 11, Ex. B). The California Bar charged that Respondent's Florida misconduct constituted "practicing law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction" in violation of Rule 1–300(B) of the California disciplinary rules and also violated §§ 6068(a), 6103, 6106 and 6127 California Business and Professions Code.[2]

---

1. A copy of the September 14, 1989 order of the Florida Supreme Court approving Respondent's "petition for resignation without leave to reapply" from the Florida Bar is attached as an exhibit to one of the attach-

ments to the Statement of Bar Counsel (*See* Record Index Tab 11, Exhibit K)

2. The provisions of the California Business and Professions Code that Respondent was charged with violating were the following:

Those charges never were heard, but were dismissed by the State Bar Court of California on December 28, 2005, after the California Supreme Court accepted Respondent's resignation from the California Bar.

## C. *Respondent's Disciplinary History*

Respondent is 76 years old. He was admitted to the Florida Bar after his graduation from law school in 1954. He was later admitted to the California Bar in 1986. His legal career as a member of those two bars is marred by what Bar Counsel has described as an "extensive disciplinary history." Statement of Bar Counsel at p. 2. That history includes—

1. Suspension from the Florida Bar in July 1975 as a result of his felony conviction in that state for receiving stolen property. He was sentenced in the criminal case to probation for 18 months and was readmitted to the Florida Bar in 1984.

2. A federal conviction in 1990 on his plea of guilty to conspiracy to defraud the United States by preventing the IRS from computing and collecting income taxes. He was indicted on this and other tax offenses in April 1988.[3] After fleeing to Israel, passing the Israeli bar examination, and clerking for an Israeli lawyer for several months, he returned to the United States in 1989 and pled guilty to one count of the indictment, for which he was sentenced to 36 months in prison. As a result of that sentence, he spent approximately 18 months in custody before he was released to a half-way house in January 1991.

3. Resignation from the Florida Bar without leave to reapply in September 1989.

4. Suspension from the California Bar in August 1991, pending final disposition of disciplinary proceedings based upon his federal tax conviction.[4]

5. Resignation from the California Bar, accepted by the California Supreme Court on January 16, 1993. He was

§ 6068(a), which provides that it is the duty of attorneys to "support the Constitution and laws of the United States and of this state [California]";

§ 6103, which provides that "[a] willful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession ... constitute[s] [a cause] for disbarment or suspension";

§ 6106, which provides that the "commission of any act involving moral turpitude, dishonesty or corruption ... whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension"; and

§ 6127, which makes it a "contempt[ ] of the authority of the courts" to "hold[ ] oneself out as practicing or as entitled to practice law ... without being an active member of the [California] State Bar."

3. In addition to the conspiracy charge, Respondent was also charged with generating "false deductible losses for [his] ... partnership by substantially overstating expenditures and creating sham transactions which gave the appearance of arm's length transactions." *See* Decision on Respondent's petition for reinstatement to the practice of law in California, dated August 21, 1998, attached as Exhibit C to Statement of Bar Counsel.

4. Respondent's District of Columbia Bar Registration statement does not disclose either this 1991 suspension in California or Respondent's previous suspension in Florida. The "box" that should be "checked" to reveal prior suspensions is blank. *See* Statement of Bar Counsel, Exhibit A. The record in this matter does not reveal whether those suspensions or the felony convictions on which they were based were disclosed to the Court in connection with Respondent's 2004 admission to the District of Columbia Bar.

reinstated five years later in October 1998.

In sum, Respondent has been convicted of two felonies—one in Florida in 1975 for receiving stolen property and one in federal court in 1990 for conspiring to defraud the United States. These convictions led to disciplinary suspensions or bar resignations, with subsequent reinstatements in some cases. The 1975 Florida conviction, for example, resulted in his being suspended from the practice of law, but after serving his sentence of probation for 18 months, he was reinstated in Florida. He continued as a member of the Florida Bar until September 1989, when his resignation from that bar, pending charges based on his federal conviction, was accepted by the Florida Supreme Court. He has not since been reinstated in the Florida Bar.

Respondent's practice of law in two Florida matters after his resignation had been accepted by the Florida Supreme Court is the misconduct on which this reciprocal proceeding is based. That misconduct resulted in Respondent's "disbarment" from the Florida Bar in April 2005 and his resignation pending charges from the California Bar in December of that same year.

### D. *Respondent's Attempted D.C. Bar R. XI, § 14(g) and Goldberg Compliance*

After the Court entered the interim suspension order in this matter, Respondent on April 21, 2006, filed two affidavits with the Board. Both aver that "he has no active cases in the District of Columbia" and that he "has refrained from practicing

in the District of Columbia since he received a notice of this action." *See* Affidavit and "Affidavit Rule XI (g)" filed April 21, 2006, Record Index Tabs 7 and 8. The affidavit identified as filed in connection with "Rule XI (g)" adds that Respondent "had no clients to notify that he was suspended." Record Index Tab 7. The other Affidavit, apparently filed to qualify for a retroactive starting date of any suspension that might be ordered as the final decision in this matter (*see In re Goldberg*, 460 A.2d 982 (D.C.1983)), states that Respondent "has refrained from practicing in the District of Columbia since he resigned from the State Bar of California." Record Index Tab 8.

Bar Counsel on April 25, 2006 sent Respondent a letter asking that he "clarify" his statements that he "has no active cases in the District of Columbia" and "has refrained from practicing in the District of Columbia since he resigned from the State Bar of California and received a notice of this action" in view of contradicting statements in his "Response to Proposed Suspension," filed on April 4, 2006. Record Index Tab 9.[5] In a Notice of Non–Filling and of Non–Compliance filed on May 15, 2006, Bar Counsel states that, as of the date of that notice, Respondent had "yet to respond" to the request for clarification of those contradictory statements, and no response appears in the record.

## II. ANALYSIS

### A *The Court's Jurisdiction to Order Reciprocal Discipline*

The charged misconduct in this matter violated four California statutory provi-

---

5. Among the contradicting statements in Respondent's April 4, 2006 filing are statements averring that suspension of his practice in the District of Columbia "would be a great hardship on [him] and the people he is helping with their immigration problems." Those

people, he further writes, "would have no opportunity of obtaining new counsel who could become familiar with their problem fast enough to assist them before they could be deported...." *See* Response to the Notice of Proposed Order, Record Index Tab 4 at 1.

sions and California Rule of Professional Conduct 1–300(B). That disciplinary rule virtually tracks District of Columbia Rule of Professional Conduct 5.5(a), which provides that "[a] lawyer shall not ... [p]ractice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." [6] Had Respondent been a member of the District of Columbia Bar at the time of his unauthorized practice in Florida, his conduct would have violated the District of Columbia Rule. But Respondent was not then a member of the District of Columbia Bar. He was not admitted until November 2004, some eight months after the latest misconduct charged against him.

We took up a similar issue in *In re Rogers,* Bar Docket No. 408–03 (BPR Nov. 30, 2004), disbarment sanction adopted, *In re Rogers,* 902 A.2d 103 (D.C.2006). In that case, which arose as an original case in the District of Columbia, the respondent had prepared a will for an elderly couple for which he charged them a $900 fee at a time when he was not a member of the District of Columbia Bar.[7] Bar Counsel contended that the fee was "unlawful" and therefore an unreasonable fee under Rule 1.5(f), which provides that "any fee that is prohibited ... by law is *per se* unreasonable." The respondent, argued Bar Counsel, had therefore violated the mandate in

Rule 1.5(a) that "[a] lawyer's fee shall be reasonable."

We concluded that, because the respondent in *Rogers* was not within any of the four categories that are identified in D.C.Bar. R. XI, § 1(a) as persons subject to the disciplinary jurisdiction of the District of Columbia at the time of his preparation of a will for which he charged a fee, that conduct could not lawfully be the basis for a sanction under the disciplinary rules applicable to the District of Columbia Bar.[8] We rejected an argument that, because one is "presumed to be practicing law when engaging in ... preparing any legal document, including any "will" and thus engaged in the unauthorized practice of law in violation of Court Rule 49, he could be deemed a "member of the District of Columbia Bar" under D.C.Bar. R. XI, § 1(a). Court Rule 49 was adopted to prohibit persons who are not members of the bar from engaging in the practice of law, and it defines the "practice of law" in order to delineate functions that non-lawyers could not lawfully perform. To regard the presumption in Court Rule 49 as not only an aid to defining what a non-lawyer may not do, but also as a jurisdictional provision that brings under the lawyers' disciplinary rules persons who, not being lawyers, violate Court Rule 49 by engaging in the unauthorized practice of law would give that rule a broad effect that lies far beyond any purpose that could be attributed to the rule.[9]

---

6. California Rule 1–300(b) provides that "[a] member shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

7. The respondent in *Rogers* was a member of the Iowa and Nebraska bars at the time he prepared the will in the District of Columbia.

8. D.C. Bar R. XI, § 1 is entitled "Jurisdiction." Subsection (a) reads as follows:
   (a) *Persons subject to disciplinary jurisdiction.* All members of the District of Colum-

bia Bar, all persons appearing or participating pro hac vice in any proceeding in accordance with Rule 49(c)(1) of the General Rules of this Court, all persons licensed by this Court as Special Legal Consultants under Rule 46(c)(4), and all persons who have been suspended or disbarred by this Court are subject to the disciplinary jurisdiction of this Court and its Board on Professional Responsibility (hereinafter referred to as "the Board").

The reasoning that led to our recommendation regarding the Rule 1.5(f) charge in *Rogers,* however, does not carry over to the circumstances in this reciprocal disciplinary matter. Reciprocal discipline is imposed only after a lawyer who is a member of the District of Columbia Bar has been found to have violated the disciplinary rules of another jurisdiction (or has resigned in lieu of subjecting himself to a proceeding to determine whether he has violated those rules). *See In re Richardson,* 692 A.2d 427 (D.C.1997). In many reciprocal cases, the lawyer has also been either suspended or disbarred from the practice of law. Reciprocal discipline is necessary, for otherwise such suspended or disbarred lawyers would be free to relocate in the District of Columbia and take up or continue practicing law here. In a reciprocal discipline case, unlike in an original jurisdiction matter, the Court is not imposing a sanction against a lawyer who has run afoul of the District of Columbia disciplinary rules. The Court is deciding whether a District of Columbia lawyer who has violated the disciplinary rule of another jurisdiction should be stopped from practicing law in the District of Columbia or otherwise disciplined in the District of Columbia for his misconduct in another jurisdiction. As the first sentence in this report states, the proceeding in this matter "is predicated" on the order of a court in another jurisdiction.

The Court has jurisdiction over Respondent because he is a member of the District of Columbia Bar. D.C. Bar R. XI, § 1(a). Whether and how that jurisdiction is to be exercised is determined by the provisions of D.C. Bar R. XI, § 11(c), which directs the imposition of reciprocal discipline "unless the attorney demonstrates, by clear and convincing evidence, that" one of five exceptions applies. *See supra,* p. 451, n. 6. One of those exceptions-Exception (5)-applies when "[t]he misconduct elsewhere does not constitute misconduct in the District of Columbia." As we pointed out above, however, unauthorized practice of law is proscribed by Rule 5.5 of the District of Columbia Rules of Professional Conduct in words that are similar to the California disciplinary rule that Respondent was charged with violating. *See* discussion *supra,* pp. 448–49. Accordingly, the mandate that "[r]eciprocal discipline shall be imposed" in the opening sentence in D.C. Bar R. XI, § 11(c) requires that reciprocal discipline be imposed in this case.

### B. *Discipline Warranted in the District of Columbia*

Identical reciprocal discipline is imposed in reciprocal cases, unless the respondent demonstrates, by clear and convincing evidence, that one or more of the five exceptions set forth in D.C. Bar R. XI, § 11(c) apply. D.C. Bar R. XI, § 11(f); *In re Zilberberg,* 612 A.2d 832, 834 (D.C. 1992).[10] Moreover, when a respondent

---

9. The Court in *Rogers,* after noting that we had recommended that Bar Counsel's Rule 1.5 charge be dismissed, accepted Bar Counsel's choice "not to press the issue." *Rogers,* 902 A.2d at 103–04 n. 1. Since it agreed with Bar Counsel that the charge was "immaterial in view of the Board's other findings and conclusions and its recommendation of disbarment," the Court "dismiss[ed] the Rule 1.5(f) charge as moot without addressing it on its merits." *Id.*

10. D.C. Bar R. XI, § 11(c) provides that "[r]eciprocal discipline shall be imposed unless the attorney demonstrates ... that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

does not contest reciprocal discipline, the Board's role is limited to reviewing the foreign proceeding " 'sufficiently to satisfy itself that no obvious miscarriage of justice would result in the imposition of identical discipline....' " *In re Childress,* 811 A.2d 805, 807 (D.C.2002) (quoting *In re Spann,* 711 A.2d 1262, 1265 (D.C.1998)). The imposition of identical discipline when the respondent fails to object "should be close to automatic, with minimum review by both the Board and the Court." *In re Cole,* 809 A.2d 1226, 1227 n. 3 (D.C.2002) (per curiam).

Respondent has proffered no evidence that he was deprived of due process, and no infirmity of proof has been, nor could be demonstrated in this matter. His California disciplinary order resulted from his own voluntary resignation from the California Bar, with charges pending that were based upon misconduct that he had admitted in a previous Florida disciplinary proceeding. Consequently, no issue arises in this matter under exceptions (1) or (2) of D.C. Bar R. XI, § 11(c). Nor would reciprocal discipline in this matter result in a "grave injustice" under exception (3). Even Respondent's assertion of the "hardship" that he and his clients would suffer by his suspension from the District of Columbia Bar is seriously undercut by the contradictory statements in his Section 14(g) and *Goldberg* affidavits.

The California order accepting Respondent's resignation pending charges is a lawful predicate for the Court to order reciprocal discipline under D.C. Bar R. XI, § 11. *In re Day,* 717 A.2d 883 (D.C.1998); *In re Richardson,* 692 A.2d 427 (D.C.1997), *cert. denied,* 522 U.S. 1118, 118 S.Ct. 1056, 140 L.Ed.2d 118 (1998). Moreover, Respondent agreed in his California proceeding (as well as in his Florida proceeding) to conditions that Bar Counsel maintains are equivalent to disbarment and that we have deemed equivalent to a five-year suspension with a fitness condition (*see, e.g. In re Tanner,* 913 A.2d 1258 (D.C.2006)); *In re Angel,* 889 A.2d 993 (D.C.2005).

The Court's April 4, 2006 order in this matter directed Respondent to "show cause before the Board on Professional Responsibility, if cause there be, within 10 days why identical, greater or lesser discipline should not be imposed in the District of Columbia." Record Index Tab 5. The filing enclosed with letter to the Court, dated March 28, 2006, which Respondent filed in response to Bar Counsel's letter filing the California disciplinary order in this matter, although filed the day before the Court entered its April 4, 2006 order, appears to be Respondent's attempt to show cause why identical discipline should not be imposed. The Court, however, considered Respondent's contentions and rejected them in refusing to lift the interim suspension that previously had been ordered by the Court. Under these circumstances, and in view of the fact that Respondent has made no response to Bar Counsel's Statement of Position, we deem the "no-obvious-miscarriage-of-justice" test articulated by the Court in *Spann* and subsequent cases as the appropriate standard of review in this matter. But we reach the same result whether review be conducted under that standard or by direct application of D.C. Bar R. XI, § 11(c).

(3) The imposition of the same discipline by the Court would result in grave injustice; or
(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

In Respondent's filing in opposition to Bar Counsel's request for an interim suspension order, he offered three reasons for his position that his resignation from the California Bar "should not [a]ffect his membership in the Bar of the District of Columbia Court of Appeals." Response to the Notice of Proposed Order ("Response to Notice"), Record Index Tab 4 at p. 1. First, he denied culpability and contended that "after explaining the situation, this Honorable Court should determine that [his] actions did not constitute any misconduct in the District of Columbia and should not warrant the imposition of discipline from the Bar of the District of Columbia Court of Appeals." *Id.* The record, however, contains his clear admission of unauthorized practice in the Florida proceeding, and Respondent has offered no evidence that might tend to disprove or diminish his culpability. *See* Conditional Guilty Plea and Consent Judgment for Discipline, filed in *Florida Bar v. Lebowitz,* Fla. Sup.Ct. No. SC04–1598, 901 So.2d 874, filed herein as part of Exhibit B to Statement of Bar Counsel (Record Index Tab 11).

Second, Respondent asserts that it would be "unjust and oppressive to be punished again by the Bar" because it would be "a great hardship on respondent and the people he is helping with their immigration problems." Response to Notice, Record Index Tab 4 at p. 1. That assertion also is unproven, and it is contradicted by Respondent's own sworn statements in his later filed affidavits. *See supra,* p. 450, n. 5. Finally, he urges that his conduct "in no way poses any threat of harm to [his] clients." Response to Notice, Record Index Tab 4 at p. 2. On the contrary, "[p]racticing law without a license in violation of a state statute is

serious misconduct." *In re Harper,* 785 A.2d 311, 317 (D.C.2001).

■ Were it not for Respondent's history of felony convictions, the disciplinary suspensions in both Florida and California resulting from those convictions and other aggravating factors in this matter, the two instances of unauthorized practice of law with which Respondent was charged at the time of his resignation in California (and that he admitted in Florida) might warrant discipline that is substantially different— and considerably less onerous—than disbarment or suspension for five years. *See, e.g., In re Schoeneman,* 891 A.2d 279 (D.C. 2006) (four-month suspension for unauthorized practice and other disciplinary violations); *In re Ray,* 675 A.2d 1381 (D.C. 1996) (six-month suspension for unauthorized practice and other violations, including negligent misappropriation); *In re Kennedy,* 605 A.2d 600 (D.C.1992) (nine-month suspension with fitness condition for unauthorized practice "continued over a period of years" and previous suspension for unauthorized practice); *In re Washington,* 489 A.2d 452 (D.C.1985) (three-month suspension for unauthorized practice and other violations). Generally in District of Columbia cases involving unauthorized practice violations, a sanction as severe as disbarment or lengthy suspension has been imposed only when the unauthorized practice violation is accompanied by violations that would, in themselves, warrant those more severe sanctions. *See, e.g., In re Devaney,* 870 A.2d 53 (D.C.2005) (unauthorized practice accompanied by egregious violation of Rule 1.8(b), which prohibits the preparation of "an instrument giving the lawyer or a person related to the lawyer ... any substantial gift from a client ... except where the client is related to the donee.")[11]; *In re Asher,* 772 A.2d 1161

---

11. The respondent in *Devaney* had taken advantage of a mentally-impaired elderly wom-

(D.C.2001) (unauthorized practice accompanied by intentional misappropriation of client's funds, knowingly made false statements of material fact to a tribunal, conduct involving dishonesty, fraud, deceit or misrepresentation and criminal acts of forgery and fraud); *In re Wade,* 526 A.2d 936 (D.C.1987) (unauthorized practice accompanied by misappropriation and conversion of clients funds). On the other hand, in previous reciprocal cases that have involved unauthorized practice, coupled only with "related violations" of other disciplinary rules, the Court has ordered disbarment as reciprocal discipline identical to the discipline imposed in the original jurisdiction. *See, e.g., In re Barneys,* 861 A.2d 1270, 1275 (D.C.2004) (reciprocal case from Maryland); *In re Harper,* 785 A.2d at 317 (reciprocal case from Maryland).

Although the only charges in the California proceeding on which this matter is based are two instances of unauthorized practice, Respondent's prior felony convictions and his previous suspensions are serious aggravating factors. The federal tax offense that he admitted in his guilty plea was punished with a sentence of three years in prison. Moreover, his unauthorized practice in Florida not only violated the Florida law but also was totally at odds with his resignation from the Florida Bar, which the Florida Supreme Court had accepted in 1989 in lieu of further disciplinary proceedings based on his federal tax conviction. The Florida court regarded Respondent's conduct as a violation of its 1989 order (*see* Report of Referee, part of Exhibit B to Statement of Bar Counsel at

p. 3, approved by Fla. Sup.Ct., also part of Exhibit B), and accepted his resignation from its bar "without leave to reapply for five (5) years." [12]

A form of discipline that is not identical to the discipline ordered by the original court can only be imposed in a District of Columbia reciprocal proceeding upon a demonstration, by clear and convincing evidence, either that "[t]he imposition of the same discipline by the Court would result in grave injustice" or the "misconduct established warrants substantially different discipline in the District of Columbia." D.C. Bar R. XI, § 11(c)(3) and (c)(4). The burden of establishing the applicability of these exceptions is heavy. Evidence to support the exception must be "clear and convincing," that is, evidence that "will produce ... a firm belief or conviction as to the facts sought to be established." *In re Cater,* 887 A.2d 1, 24 (D.C.2005); *In re Dortch,* 860 A.2d 346, 358 (D.C.2004) (quoting *In re T.J.,* 666 A.2d 1, 16 n. 17 (D.C. 1995)). In view of the aggravating circumstances that this record presents and the Court's imposition of disbarment in previous reciprocal cases in which the principal violations have been unauthorized practice of law, we are satisfied that no miscarriage of justice would result from the imposition of identical discipline in this matter. Moreover, the record does not contain clear and convincing evidence of circumstances that would warrant application of either D.C. Bar R. XI, § 11(c)(3) or § 11(c)(4). We therefore recommend that the Court order Respondent suspended for five years with a fitness condition as iden-

---

an by persuading her to execute a series of codicils to her will that "removed substantial bequests to three charities and redirected them to members of his family" and a "power of attorney naming himself as [her] attorney-in-fact to transact all of her business and manage all of her property and affairs." *Devaney,* 870 A.2d at 55.

12. As we point out *supra,* p. 449, n. 4, Respondent appears to have omitted required disclosure of his prior Florida and California suspensions on his District of Columbia Bar Registration Statement.

tical reciprocal discipline in this matter. *See Tanner, supra; Angel, supra.*

### III. CONCLUSION

The Board recommends that, as identical reciprocal discipline in this matter, Respondent, Walter B. Lebowitz, be suspended from the practice of law in the District of Columbia for a period of five years, with reinstatement conditioned on his demonstrating his fitness to resume the practice of law.

The Board further recommends that Respondent's attention be directed to the requirements of D.C. Bar R. XI, § 14(g), and their effect on his eligibility for reinstatement, *see* D.C. Bar R. XI, § 16(c), and that Respondent's suspension commence for purposes of reinstatement upon his full compliance with D.C. Bar R. XI, § 14(g).[13]

### REPORT ON PROFESSIONAL RESPONSIBILITY

By: /s/ James P. Mercurio

Dated:

All members of the Board concur in this Report and Recommendation, except Ms. Coghill-Howard and Ms. Knapp, who did not participate.

---

13. We agree with Bar Counsel's position that Respondent's previous affidavits are not fully compliant with the requirements of D.C. Bar R. XI, § 14(g) and do not regard the *Susman* criteria for permitting supplementation of deficient affidavits as satisfied in this matter. *See In re Susman,* Bar Docket No. 024–00 (BPR Oct. 25, 2004) at p. 8, *adopted, In re Susman,* 876 A.2d 637 (D.C.2005).